# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FELIX TORREZ, Individually and on behalf of all others similarly situated | Case No. _____ |
| v. | Jury Trial Demanded |
| QUALTEK LLC | FLSA Collective Action<br>Rule 23 Class Action |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

1.     Felix Torrez (Torrez) brings this class and collective action to recover unpaid wages and other damages from QualTek, LLC (QualTek).

2.     Like the other Telecom Employees (defined below) Torrez regularly worked more than 40 hours a workweek.

3.     But QualTek does not pay them for all the hours they work.

4.     Instead, QualTek requires Torrez and the other Telecom Employees to perform compensable work "off the clock."

5.     Specifically, before clocking in, QualTek requires Torrez and the other Telecom Employees to arrive at Qualtek's shop facility and wait to clock in until the morning meeting begins.

6.     And QaulTek only pays Torrez and the other Telecom Employees for the number of hours on a jobsite it estimates the job will require in its bid for the job.

7.     But Torrez and the Telecom Employees regularly must work beyond these pre-determined bid hours "off the clock" to complete their job duties in accordance with QualTek's (and its customers') policies, procedures, specifications, and expectations.

8.     And QualTek does not pay Torrez and the other Telecom Employees for time spent driving or riding between jobsites during the workday and for time spent driving or riding from the day's final jobsite back to QualTek's shop.

9.      Finally, QualTek does not pay them for time spent unloading tools, equipment, and disposing of garbage from the jobsite, unhitching and parking the QualTek trailer, and locking up, at the end of each workday.

10.     Collectively these practices are referred to as QualTek's "off the clock pay scheme."

11.     Finally, QualTek automatically deducts 30 minutes each workday from Torrez's and the other Telecom Employees' recorded hours worked for so-called "meal periods" (QualTek's "meal deduction" policy).

12.     But Torrez and the other Telecom Employees do not actually receive *bona fide* meal periods.

13.     Instead, QualTek requires Torrez and the other Telecom Employees to remain on duty and performing compensable work throughout their shifts, and they are continuously subjected to work-related interruptions during their unpaid "meal periods."

14.     QualTek's off the clock pay scheme and meal deduction policy violate the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (FLSA) and the New Mexico Minimum Wage Act (NMMWA), N.M.S.A. § 50-4-20, *et seq.*, by depriving Torrez and the other Telecom Employees of wages for all hours worked, including overtime wages for hours worked in excess of 40 in a workweek.

## JURISDICTION & VENUE

15.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

16.     The Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

17.     This Court has general personal jurisdiction over QualTek because QualTek maintains its headquarters in Blue Bell, Pennsylvania.

18.    Venue is proper because QualTek maintains its headquarters in Blue Bell, Pennsylvania, which is in this District. 28 U.S.C. § 1391(b)(1).

**PARTIES**

19.    Torrez worked for QualTek as a Foreman in Arizona, California, Colorado, New Mexico, and Texas from approximately September 2021 until August 2023.

20.    Throughout his employment, QualTek classified Torrez as non-exempt and paid him on an hourly basis.

21.    Throughout his employment, QualTek subjected Torrez to its off the clock pay scheme and meal deduction policy and failed to pay him wages, including overtime wages, for all hours worked.

22.    Torrez's written consent is attached as **Exhibit 1**.

23.    Torrez brings this action on behalf of himself and other similarly situated hourly, non-exempt QualTek employees who were subject to QualTek's off the clock pay scheme and/or meal deduction policy.

24.    Thus, QualTek uniformly deprives these employees of wages for all hours worked, including overtime wages, in violation of the FLSA and NMMWA.

25.    The FLSA Collective of similarly situated employees is defined as:

> **All hourly, non-exempt Qualtek employees who were subject to QualTek's off the clock pay scheme and/or meal deduction policy at any time during the last three years ("FLSA Collective").**

26.    Torrez also seeks to represent such a class under the NMMWA pursuant to Fed. R. Civ. P. 23.

27.    The New Mexico Class of similarly situated employees is defined as:

> **All hourly, non-exempt QualTek employees in New Mexico who were subject to QualTek's off the clock pay scheme and/or meal deduction policy ("New Mexico Class").**

28.     The FLSA Collective and the New Mexico Class are collectively referred to as the "Telecom Employees."

29.     QualTek is a Delaware limited liability company that maintains its headquarters in Blue Bell, Pennsylvania.

30.     QualTek is registered to do business in the Commonwealth.

31.     QualTek may be served with process by serving its registered agent: **Corporation Service Company, 2595 Interstate Drive, Suite 103, Harrisburg, Dauphin County, Pennsylvania 17110**.

### COVERAGE UNDER THE FLSA

32.     At all relevant times, QualTek was and is an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

33.     At all relevant times, QualTek was and is an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

34.     At all relevant times, QualTek has been part of an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as cellphones, personal protective equipment, tools, etc. – that have been moved in or produced for commerce.

35.     In each of the past 3 years, QualTek has had and has an annual gross volume of sales made or business done of not less than $1,000,000.

36.     At all relevant times, Torrez and the other Telecom Employees were QualTek's "employees" within the meaning of Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1).

37.    QualTek uniformly subjects Torrez and the other Telecom Workers to its off the clock pay scheme and meal deduction policy.

38.    As a result, QualTek failed to pay them wages for all hours worked, including overtime hours, in violation of the FLSA.

39.    Qualtek's uniform off the clock pay scheme and meal deduction policy, which deprive Torrez and the other Telecom Employees of overtime compensation for all overtime hours worked in the weeks in which these employees work in excess 40 hours, violate the FLSA. 29 U.S.C. § 207(a) & (e).

## FACTS

40.    QualTek provides infrastructure construction services for the renewable energy and telecommunications industries throughout North America.[1]

41.    To provide its services, QualTek employs workers, such as Torrez and the other Telecom Employees.

42.    QualTek uniformly classifies these employees as non-exempt and pays them on an hourly basis.

43.    While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay and time recording practices for similar work.

44.    For example, Torrez worked for QualTek as a Foreman in Arizona, California, Colorado, New Mexico, and Texas from approximately September 2021 until August 2023.

45.    Torrez's primary job duties included building, repairing, maintaining, and/or upgrading hardware on telecommunications towers at jobsites assigned by QualTek and in accordance with QualTek's (and its customers') instructions, specifications, policies, and procedures.

46.    QualTek paid Torrez approximately $33 per hour.

---

[1] https://www.qualtekservices.com/About/ (last visited April 19, 2024).

47.     Throughout his employment, Torrez worked approximately 10-12 hours a day for 4 to 5 days a week or approximately 40 to 60 hours a workweek.

48.     Torrez reported his hours worked to QualTek through its uniform timeclock system.

49.     QualTek's records reflect the hours Torrez worked each week "on the clock."

50.     But throughout his employment, QualTek subjected Torrez to its off the clock pay scheme and meal deduction policy and failed to pay him wages for all hours worked, including overtime wages for hours he worked in excess of 40 in a workweek.

51.     As a result, QualTek failed to pay Torrez overtime wages for all hours worked over 40 in a workweek (including those worked "off the clock" during his "lunch periods"), in violation of the FLSA and NMMWA.

52.     And the other Telecom Employees work the same or similar schedule.

53.     And QualTek requires Torrez and the other Telecom Employees to follow and abide by the same work, time, pay, and overtime policies and procedures in the performance of their jobs.

54.     QualTek uniformly subjects Torrez and the other Telecom Employees to its off the clock pay scheme and meal deduction policy.

55.     Specifically, QualTek requires Torrez and the other Telecom Workers to arrive at QaulTek's shop facility each morning.

56.     But QualTek does not permit them to clock in until management begins the morning meeting regarding the day's job duties and/or overall policies and procedures.

57.     QualTek requires Torrez and the other Telecom Workers to be present at QualTek's shop, "off the clock," from 5 to 30 minutes before the morning meeting begins.

58.     If Torrez and the other Telecom Employees clock in upon arriving at QualTek's shop, prior to commencement of the morning meeting, QualTek adjusts their recorded work hours down.

59.     Either prior to and/or following the morning meeting, Torrez and the other Telecom Employees gather their tools and equipment from QualTek's shop, necessary for the day's job(s).

60.     This equipment includes cable, hardware, and other consumable materials that Torrez and the other Telecom employees use in their construction, repair, maintenance, and upgrading of telecommunication towers each workday.

61.     Additionally, to secure jobs constructing, repairing, maintaining, and/or upgrading telecommunications towers, QualTek submits bids.

62.     These bids include how many labor hours QualTek estimates the particular job will require.

63.     For example, QualTek might bid on a job to upgrade a tower to 5G and estimate the job will require 5 hours of labor by each of a five-person crew.

64.     But, if the five-person crew each work for 6 hours to complete the 5G upgrade, QualTek only pays them for the 5 "bid hours" of work.

65.     QualTek's bids regularly do not reflect the number of labor hours necessary to complete jobs.

66.     But Torrez and the other Telecom Employees must complete the jobs in accordance with QualTek's and its customers' policies, procedures, specifications, and expectations, even when doing so requires them to work more hours than QualTek's bid estimate.

67.     Indeed, Torrez and the other Telecom Employees regularly work more hours completing jobs than QualTek's bid hours, "off the clock."

68.     Despite Torrez and the other Telecom Employees regularly working more hours than QualTek's bid estimates to complete jobs, QualTek does not compensate Torrez and the other Telecom Employees for the hours they work in excess of the bid hours.

69.     QualTek is aware of the actual hours Torrez and the other Telecom Employees work on each job because the Telecom Employees record their hours worked through QualTek's timekeeping system and QualTek closely monitors them to ensure all work is carried out in accordance with QualTek's and its customers policies, procedures, specifications, and expectations.

70.     And if Torrez and the other Telecom Workers remain clocked in for a job beyond the number of bid hours, QualTek adjusts their recorded work hours down to reflect only the number of hours QualTek estimated in its bid.

71.     QualTek further requires Torrez and the other Telecom Workers to travel in QualTek company vehicles between job sites during their workday "off the clock" and without pay.

72.     QualTek likewise requires them to travel in QualTek company vehicles from their last job site of the day to QualTek's shop "off the clock" and without pay.

73.     And Torrez and the other Telecom Employees are required to take and make phone calls to and from QualTek management and customers throughout their travel time.

74.     This required travel time is necessary to the performance of the Telecom Workers' duties.

75.     Torrez and the other Telecom Employees transport equipment without which their telecommunication tower construction, maintenance, repair, and upgrading duties could not be done.

76.     This travel time primarily benefits QualTek.

77.     This travel time is therefore integral and indispensable to the Telecom Workers' primary duties.

78.     QualTek could not eliminate this "off the clock" travel altogether without impairing Torrez's and the other Telecom Workers' ability to perform their primary duties.

79.     And QualTek knows that Torrez and the other Telecom Employees spend approximately 2 to 6 hours driving or riding between job sites and QualTek's shop each workday.

80.     In fact, QualTek utilizes GPS trackers on Torrez and the other Telecom Employees' company-issued vehicles to monitor all their activities, movements, and locations to ensure they complete their heavy workloads in accordance with QualTek's strict policies, procedures, and requirements.

81.     And if Torrez and the other Telecom Workers remain clocked in for this travel time, QualTek takes note and adjusts their recorded work hours down.

82.     Once Torrez and the other Telecom Employees return to QualTek's shop at the end of the workday, QualTek requires them to unload and store their tools and equipment, unload and dispose of garbage from the jobsite(s), unhitch and park QualTek's trailer, if used that day, and lock up the shop – all "off the clock" and without pay.

83.     If Torrez and the other Telecom Workers remain clocked in for this work time, QualTek adjusts their recorded hours down.

84.     This process of unloading and storing the equipment and tools takes approximately 15 minutes each workday.

85.     This unloading process is required by QualTek and is necessary to the performance of the Telecom Workers' duties.

86.     This unloading primarily benefits QualTek.

87.     The unloading is therefore integral and indispensable to the Telecom Workers' primary duties.

88.     Indeed, QualTek could not eliminate this "off the clock" unloading and storing work altogether without impairing Torrez's and the other Telecom Workers' ability to perform their primary duties.

89.    Finally, QualTek subjects Torrez and the other Telecom Employees to its common practice of automatically deducting 30 minutes a workday from their recorded work time and wages for so-called "meal periods" under its auto-deduct policy.

90.    Specifically, QualTek automatically deduct 30 minutes a day from Torrez's and the Telecom Employees' recorded work time and wages for "meal periods."

91.    QualTek automatically deducts this time regardless of whether Torrez and the Telecom Employees actually receive a full, uninterrupted, 30-minute meal period.

92.    Indeed, QualTek simply assumes they receive a *bona fide* meal period each workday.

93.    But QualTek fails to provide Torrez and the other Telecom Employees with *bona fide* meal periods.

94.    And Torrez and the other Telecom Employees do not actually receive *bona fide* meal periods.

95.    Instead, QualTek requires Torrez and the other Telecom Employees to remain on duty and perform compensable work throughout their shifts.

96.    And QualTek continuously subjects Torrez and the Other Telecom Employees to work interruptions during their unpaid meal periods.

97.    Because of these constant work interruptions, Torrez and the other Telecom Employees are not free to engage in personal activities during their unpaid meal periods.

98.    Rather, during their unpaid "meal periods," Torrez and the other Telecom Employees are necessarily forced to substantially perform their regular job duties.

99.    Thus, Torrez and the other Telecom Employees routinely spend their unpaid "meal periods" performing work for QualTek's—not their own—predominant benefit.

100.    This unpaid time is compensable under the FLSA and NMMWA because Defendants knew, or should have known, that (1) Torrez and the other Telecom Employees were performing

unpaid work during their "meal periods," (2) they were interrupted or subject to interruptions with work duties during any attempted meal period, (3) they were not completely relieved of all duties during their "meal periods," (4) they entirely skipped the meal period due to work demands, (5) the meal period was less than 30 consecutive minutes, (6) they were not free to engage in personal activities during their meal periods because of constant work interruptions, (7) they remained on QualTek's (or its customer's) premises, and/or (8) they spent their unpaid meal periods substantially performing their regular job duties for QualTek's predominant benefit.

101.    QualTek fails to exercise its duty as Torrez's and the other Telecom Employees' employer to ensure they are not performing work that QualTek does not want performed during their unpaid "meal periods."

102.    And QualTek Torrez and the other Telecom Employees routinely work "off the clock" during their unpaid meal breaks because QualTek expects and requires them to do so.

103.    Despite accepting the benefits, QualTek does not pay Torrez and the other Telecom Employees for the compensable work they perform during their "meal periods."

104.    Thus, under Qualtek's uniform auto-deduction policy, Torrez and the other Telecom Employees are denied overtime pay for those on-duty "meal breaks" in workweeks in which they worked over 40 hours in violation of the FLSA and NMWWA.

### CLASS & COLLECTIVE ACTION ALLEGATIONS

105.    Torrez brings his claims as a class and collective action under Section 216(b) of the FLSA and Fed. R. Civ. P. 23.

106.    The Telecom Employees are uniformly victimized by QualTek's off the clock pay scheme and meal deduction policy, in willful violation of the FLSA and in violation of the NMMWA.

107.    Other Telecom Employees worked with Torrez and indicated they were paid in the same manner, performed similar work, and were subject to QualTek's same illegal pay policies.

108.    Based on his experiences with QualTek, Torrez is aware QualTek's illegal practices were imposed on other Telecom Employees.

109.    Upon information and belief, the Telecom Employees are so numerous that joinder of all members is impracticable.

110.    While the exact number of Telecom Employees is unknown to Torrez at this time, it can be readily and easily ascertained from QualTek's business and personnel records through appropriate discovery.

111.    The Telecom Employees are similarly situated in all relevant respects.

112.    Even if their precise job duties and locations might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime pay.

113.    Therefore, the specific job titles or precise job locations of the various members of the Telecom Employees do not prevent class or collective treatment.

114.    Rather, the Telecom Employees are held together by QualTek's illegal off the clock pay scheme and meal deduction policy, which systematically deprive Torrez and the Telecom Employees of proper overtime wages for all hours worked.

115.    QualTek's failure to pay these employees overtime wages at the rates required by the FLSA and NMMWA results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Telecom Employees.

116.    The back wages owed to Torrez and the Telecom Employees can be calculated using the same records and using the same formula.

117.    Torrez's experiences are therefore typical of the experiences of the Telecom Employees.

118.    Torrez has no interests contrary to, or in conflict with, the Telecom Employees that would prevent class or collective treatment.

119.    Like each Telecom Employee, Torrez has an interest in obtaining the unpaid wages owed under state and/or federal law.

120.    A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

121.    Absent a class and collective action, many Telecom Employees will not obtain redress for their injuries, and Qualtek will reap the unjust benefits of violating the FLSA and NMMWA.

122.    Further, even if some of the Telecom Employees could afford individual litigation against QualTek, it would be unduly burdensome to the judicial system.

123.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Telecom Employees, as well as provide judicial consistency.

124.    The questions of law and fact that are common to each Telecom Employee predominate over any questions affecting solely the individual members.

125.    Among the common questions of law and fact are:

  a.    Whether Qualtek's off the clock pay scheme requested, suffered, permitted, or allowed Torrez and the Telecom Employees to work "off the clock," in violation of the FLSA and NMMWA;

  b.    Whether QualTek failed to pay Torrez and the Telecom Employees overtime wages for all hours worked in excess of 40 hours in a workweek, including hours worked "off the clock," in violation of the FLSA and/or NMMWA;

  c.    Whether QualTek knew, or had reason to know, Torrez and the Telecom Employees were requested, suffered, permitted, or allowed to work "off the clock," in violation of the FLSA and NMMWA;

  d.    Whether QualTek's meal deduction policy deprived the Telecom Employees of pay for time worked during meal periods that were not

*bona fide*, continuous, and uninterrupted in violation of the FLSA and NMMWA;

e.    Whether QualTek's violations of the NMWWA resulted from a continuing course of conduct;

f.    Whether QualTek's decision not to pay Torrez and the Telecom Employees overtime wages at the required rate for all overtime hours worked was made in good faith;

g.    Whether QualTek's violations of the FLSA were willful.

126.    Torrez and the Telecom Employees sustained damages arising out of QualTek's illegal and uniform employment policies.

127.    Torrez knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

128.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to QualTek's records, and there is no detraction from the common nucleus of liability facts.

129.    Therefore, the issue of damages does not preclude class or collective treatment.

130.    QualTek is liable under the FLSA and NMMWA for failing to timely pay Torrez and the Telecom Employees overtime compensation at the required premium rate for all overtime hours worked for in excess of 40 in a workweek.

131.    Under QualTek's illegal off the clock scheme, Torrez and the other Telecom Employees were not paid overtime compensation for all overtime hours worked when they worked more than 40 hours in a workweek.

132.    As part of its regular business practices, QualTek intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Torrez and the Telecom Employees.

133.    QualTek's illegal policies deprived Torrez and the Telecom Employees of wages, including overtime compensation at the required premium rate, which they are owed under state and/or federal law.

134.    There are many similarly situated FLSA Collective Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

135.    This notice should be sent to the FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

136.    Those similarly situated employees are known to QualTek, are readily identifiable, and can be found through QualTek's business and personnel records.

### QUALTEK'S VIOLATIONS WERE WILLFUL AND/OR DONE IN RECKLESS DISREGARD OF THE FLSA

137.    Torrez incorporates all other paragraphs by reference.

138.    QualTek knew it was subject to the FLSA's overtime provisions.

139.    QualTek knew the FLSA required it to pay non-exempt employees, including Torrez and the other Telecom Employees, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

140.    QualTek knew Torrez and the other Telecom Employees were non-exempt employees entitled to overtime pay.

141.    QualTek knew it paid Torrez and the other Telecom Employees on an hourly basis.

142.    QualTek knew Torrez and each Telecom Employee worked over 40 hours in at least one workweek during the three years before this Complaint was filed because QualTek required these employees to record their hours worked using its timeclock system.

143.    QualTek knew the FLSA required it to pay employees, including Torrez and the other Telecom Employees, for all hours these employees performed compensable work.

144.    QualTek knew that, as Torrez's and the other Telecom Employees' employer, it had a duty to ensure these employees were not performing work "off the clock" (without pay) that QualTek did not want performed.

145.    QualTek knew that it prohibited Torrez and the other Telecom Employees from clocking in for their shifts when they arrived at QualTek's shop until QualTek initiated the morning meeting.

146.    QualTek knew the FLSA required it to pay its employees, including the Hourly Employees, for all hours they performed compensable work.

147.    QualTek knew it had a duty to ensure its Hourly Employees were not performing work "off the clock" (without pay).

148.    Nonetheless, QualTek requested, suffered, permitted, or allowed them to arrive at the shop at 7:00 a.m.

149.    QualTek knew that it prohibited Torrez and the other Telecom Employees from recording their hours worked on a job in excess of QualTek's bid hours.

150.    Nonetheless, QualTek requested, suffered, permitted, or allowed them to work hours to complete jobs in excess of the hours it bid on the jobs.

151.    QualTek knew that it prohibited Torrez and the other Telecom Employees from recording their time spent driving between job sites and from their last job site of the day back to QualTek's shop.

152.    Nonetheless QualTek requested, suffered, permitted, or allowed them to undertake this drivetime or riding time.

153.    QualTek knew that it prohibited Torrez and the other Telecom Employees from recording their hours worked unloading tools and equipment, unloading and disposing of trash, parking QualTek's trailer, and locking up QualTek's shop.

154.    Nonetheless QualTek requested, suffered, permitted, or allowed them to perform these tasks before ending their workday.

155.    QualTek knew Torrez's and the other Telecom Workers' "off the clock" work was undertaken for QualTek's predominant benefit.

156.    QualTek knew Torrez's and the other Telecom Employees' "off the clock" work was necessary to the principal work these employees performed as QualTek's Telecom Employees.

157.    QualTek knew Torrez's and the other Telecom Employees' mandatory "off the clock" work was integral and indispensable to these employees' work as QualTek Telecom Employees.

158.    QualTek knew it requested, suffered, permitted, or allowed Torrez and the other Telecom Employees to work "off the clock" when arriving at QualTek's shop before the morning meeting, when working hours to complete jobs beyond QualTek's bid hours, during drivetime or riding time between jobsites and from the last jobsite to QualTek's shop, and when unloading tools, equipment, and trash and parking Qualtek's trailer at the shop.

159.    In other words, QualTek knew, should have known, or recklessly disregarded whether Torrez and the other the Telecom Employees performed compensable work "off the clock."

160.    Nonetheless, QualTek did not pay Torrez and the Telecom Employees for the work they performed "off the clock" when arriving at QualTek's shop before the morning meeting, when working hours to complete jobs beyond QualTek's bid hours, during drivetime or riding time between

jobsites and from the last jobsite to QualTek's shop, and when unloading tools, equipment, and trash and parking Qualtek's trailer at the shop.

161.    Thus, QualTek knew, should have known, or recklessly disregarded whether it failed to pay Torrez and the Telecom Employees for all the hours they performed compensable work.

162.    QualTek's decision to prohibit Torrez and the Telecom Employees from clocking in when arriving at QualTek's shop before the morning meeting, when working hours to complete jobs beyond QualTek's bid hours, during drivetime or riding time between jobsites and from the last jobsite to QualTek's shop, and when unloading tools, equipment, and trash and parking Qualtek's trailer at the shop.

163.    QualTek's failure to pay Torrez and the other Telecom Workers overtime wages for all overtime hours worked was neither reasonable, nor was its decision not to pay these employees overtime wages for all overtime hours worked made in good faith.

164.    QualTek knowingly, willfully, and/or in reckless disregard carried out its off the clock pay scheme and meal deduction policy that deprived Torrez and the other Telecom Employees of overtime wages for all hours worked after 40 in a workweek in violation of the FLSA.

165.    QualTek knew, should have known, or recklessly disregarded whether its conduct described in this Complaint violated the FLSA.

<u>**COUNT I**</u>

**FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
(FLSA COLLECTIVE)**

166.    Torrez realleges and incorporates all other paragraphs by reference.

167.    Torrez brings his FLSA claim as a collective action on behalf of himself and the FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

168.    QualTek violated, and is violating, the FLSA by failing to pay Torrez and the FLSA Collective Members overtime compensation at rates not less than 1.5 times these employees' regular

rates of pay for all hours worked in excess of 40 in a workweek, including hours worked "off the clock" under its off the clock pay scheme and meal deduction policy.

169.    Throughout the relevant period, QualTek failed to pay Torrez and the FLSA Collective Members for hours worked, including hours worked in excess of 40 in a workweek, in accordance with its off the clock pay scheme and meal deduction policy.

170.    But throughout the relevant period, QualTek expected and required Torrez and the FLSA Collective Members to work "off the clock," in accordance with its off the clock pay scheme and meal deduction policy.

171.    Torrez and the FLSA Collective Members have been harmed as a direct and proximate result of QualTek's unlawful conduct because they have been deprived of wages owed for work that they performed and from which QualTek derived a direct and substantial benefit.

172.    QualTek knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Torrez and the FLSA Collective Members overtime compensation for all overtime hours worked.

173.    QualTek's failure to pay Torrez and the FLSA Collective Members overtime compensation for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime compensation for all overtime hours worked made in good faith.

174.    Accordingly, Torrez and the FLSA Collective Members are entitled to recover their unpaid overtime wages under the FLSA in an amount equal to 1.5 times their regular hourly rates of pay, plus an equal amount as liquidated damages, and attorney's fees and costs.

### COUNT II

### FAILURE TO PAY OVERTIME WAGES UNDER THE NMMWA
### (NMMWA CLASS)

175.    Torrez incorporates all other paragraphs by reference.

176.    Torrez brings his NMMWA claims as a class action on behalf of himself and others similarly situated pursuant to Fed. R. Civ. P. 23.

177.    The conduct alleged in this Complaint violates the NMMWA. *See* N.M.S.A. §§ 50-4-20, *et seq.*

178.    At all relevant times, QualTek has been an "employer" as defined by the NMMWA. *See* NM STAT. § 50-4-21(B).

179.    At all relevant times, Torrez and the New Mexico Class Members were QualTek's "employees" as defined within the NMMWA. *See* NM STAT. § 50-4-21(C).

180.    At all relevant times, QualTek has, and has had, employees (including Torrez and the Telecom Workers) engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof.

181.    The NMMWA requires employers, like QualTek, to pay non-exempt employees, including Torrez and the New Mexico Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked over 40 in any 7-day week. *See* N.M.S.A. § 50-4-22(D).

182.    Torrez and the other New Mexico Class Members are entitled to overtime pay for all hours worked in excess of 40 in a 7-day week under the NMMWA.

183.    QualTek violated, and is violating, the NMMWA by employing non-exempt employees (Torrez and the other New Mexico Class Members) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a 7-day week, including those worked "off the clock." *See* N.M.S.A. § 50-4-22(D).

184.    QualTek's unlawful conduct harmed Torrez and the other New Mexico Class Members by depriving them of overtime wages they are owed under New Mexico law.

185.    QualTek's unlawful practices at issue were, and are, part of a continuing course of conduct, entitling Torrez and the other Telecom Employees to recover for all such violations, regardless of the date they occurred.

186.    Accordingly, Torrez and the other Telecom Workers are entitled to recover their unpaid overtime wages in amount equal to 1.5 times their regular rates for hours worked over 40 in a 7-day workweek; "an additional amount equal to twice the unpaid … wages" as treble damages, N.M.S.A. § 50-4-26(C); and reasonable attorney's fees and costs incurred in this action, N.M.S.A. § 50-4-26(E).

## RELIEF SOUGHT

WHEREFORE, Torrez, individually and on behalf of the other Telecom Employees, seeks the following relief:

a.    An Order designating the FLSA Collective as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all FLSA Collective Members with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b.    An Order designating this lawsuit as a class action pursuant to Fed. R. Civ. P. 23 under the NMMWA;

c.    An Order appointing Torrez and his counsel as Class Counsel to represent the interests of the New Mexico Class;

d.    An Order pursuant to Section 16(b) of the FLSA finding QualTek liable for unpaid back wages due to Torrez and the Telecom Workers for liquidated damages equal in amount to their unpaid compensation;

e.      Judgment awarding Torrez and the Telecom Workers all unpaid overtime and other damages available under the FLSA;

f.      An Order finding QualTek liable to Torrez and the other Telecom Workers for all unpaid overtime wages owed under the NMMWA, plus treble damages in an amount equal to two times their unpaid overtime wages;

g.      A Judgment against QualTek awarding Torrez and the other Telecom Workers all their unpaid overtime wages, liquidated damages, treble damages, and any other penalties or damages available under the NMMWA;

h.      An order awarding attorneys' fees, costs, and expenses;

i.      Pre- and post-judgment interest at the highest applicable rates; and

j.      Such other and further relief as may be necessary and appropriate.

Date: April 25, 2024                              Respectfully submitted,

                                                  **GOODRICH & GEIST, PC**
                                                  By: */s/ Joshua P. Geist*
                                                          Joshua P. Geist, Esquire
                                                          PA ID No. 85745
                                                          William F. Goodrich, Esquire
                                                          PA ID No. 30235
                                                  3634 California Ave.
                                                  Pittsburgh, Pennsylvania 15212
                                                  Tel: (412) 766-1455
                                                  Fax: (412) 766-0300
                                                  josh@goodrichandgeist.com
                                                  bill@goodrichandgeist.com

                                                  Michael A. Josephson, Esquire
                                                  PA ID No. 308410
                                                  Andrew W. Dunlap, Esquire*
                                                  TX Bar No. 24078444
                                                  JOSEPHSON DUNLAP LLP
                                                  11 Greenway Plaza, Suite 3050
                                                  Houston, Texas 77046
                                                  Tel: 713-352-1100
                                                  Fax: 713-352-3300
                                                  mjosephson@mybackwages.com
                                                  adunlap@mybackwages.com

                                                  Richard J. (Rex) Burch, Esquire*
                                                  TX Bar No. 24001807
                                                  BRUCKNER BURCH PLLC
                                                  11 Greenway Plaza, Suite 3025
                                                  Houston, Texas 77046
                                                  Tel: (713) 877-8788
                                                  Fax: (713) 877-8065
                                                  rburch@brucknerburch.com


                                                   */s/ Clif Alexander*
                                                  William C. (Clif) Alexander*
                                                  Austin W. Anderson*
                                                  ANDERSON ALEXANDER, PLLC
                                                  101 N. Shoreline Blvd., Suite 610
                                                  Corpus Christi, Texas 78401
                                                  Telephone:    361.452.1279
                                                  clif@a2xlaw.com
                                                  austin@a2xlaw.com

*Pro hac vice applications forthcoming*

**COUNSEL FOR TORREZ & THE TELECOM EMPLOYEES**